

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOES 1-3, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. _____ |
| SUNG BUM CHANG, | § | |
| HYANG KYUNG CHANG, AND | § | |
| CLUB WA D/B/A WA | § | **3-08CV2189-N** |
| ENTERTAINMENT, INC. | § | |
| | § | |
| Defendants. | | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT

COME NOW, Jane Does 1-3 ("Plaintiffs") and file this Original Complaint against Defendants Sung Bum Chang ("S. Chang"), Hyang Kyung Chang ("H. Chang") and Club Wa, d/b/a Wa Entertainment, Inc. ("Club Wa") (collectively "Defendants") and would respectfully show the Court as follows:

### I.   INTRODUCTION

1.     This case stems from Defendants' unconscionable violations of the Trafficking Victims Protection Reauthorization Act. As discussed below, Plaintiffs were smuggled into the country illegally and forced to work at Club Wa for S. Chang and H. Chang (collectively referred to herein as "the Changs") in conditions of virtual slavery in violation of federal and international law.

2.     Human trafficking is a pernicious form of modern slavery that subjects victims to threats, coercion and physical abuse. Victims of trafficking are subjected to debt bondage, forced labor and commercial sexual exploitation. The common denominator of trafficking is the

use of force, fraud and coercion to exploit persons for profit. *See* United States Department of State, Trafficking in Persons Report (June 2008) ("TIP Report") at 6-7.

       3.     One form of force or coercion is the use of a bond, or debt, to keep a person under subjugation. This type of "bonded labor" or "debt bondage" is criminalized under U.S. law and included as a form of exploitation in the United Nations Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children. TIP Report at 19.

       4.     Other forms of trafficking include involuntary servitude, in which victims are led to believe that an attempted escape from their situation would result in serious physical harm to them or others, or are kept in a condition of servitude through the abuse or threatened abuse of legal processes. Many victims are physically and verbally abused, held captive or sexually exploited. Trafficking Victims Protection Act ("TVPA"), 22 U.S.C. § 7101(b).

       5.     The Republic of Korea is one source country for the trafficking of women and girls to the United States, often for purposes of commercial sex exploitation. TIP Report at 156. Plaintiffs, all of whom are Korean nationals, are among tens of thousands of victims, primarily women and children, forced to work in the United States under conditions of involuntary servitude, debt bondage and slavery. 22 U.S.C. § 7101(b).

       6.     In response to the terrible harm inflicted on victims of trafficking, Congress enacted the Trafficking Victims Protection Act ("TVPA") in 2000 to combat trafficking in persons, to ensure just and effective punishment for traffickers and to protect their victims. Id. § 7101(a).

       7.     In enacting the TVPA, Congress found that practices of sexual slavery and trafficking of women and children are abhorrent to the principles on which the United States was founded as well as grave violations of international legal standards and treaties. Id. §

7101(b)(22)-(23).  Traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks or models.  Id. § 7101(b)(4).  Traffickers often transport victims from their home communities to unfamiliar destinations away from friends and family, leaving the victims defenseless and vulnerable.  Id. § 7101(b)(5).  Victims are then either directly threatened with harm or told that physical harm may occur to them or others should the victim escape or attempt to escape.  Congress found that either direct or indirect threats have the same coercive effect on victims.  Id. § 7101(b)(7).

8.      Congress also found that trafficking in persons substantially affects interstate and foreign commerce, and trafficking for such purposes as involuntary servitude, peonage or other forms of forced labor has an impact on the nationwide employment and labor market.  Id. § 7101(b)(12).  Trafficking victims subjected to involuntary servitude and forced labor are also subjected to numerous other violations of federal and state laws, including violations of labor and immigration codes, laws against kidnapping and false imprisonment, assault, battery, fraud and extortion.  Id. § 7101(b)(10).

9.      In 2003, Congress enacted the Trafficking Victims Protection Reauthorization Act ("TVPRA").  Pub. L. No. 108-193, 114 Stat. 2875 (Dec. 19, 2003).  The TVPRA created a private right of action for victims of human trafficking.  18 U.S.C. § 1595.

## II.      JURISDICTION AND VENUE

10.     The Court has original jurisdiction over this lawsuit based on:  (a) TVPRA, 18 U.S.C. § 1595; (b) the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1964; (c) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (d) the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350; and (e) 28 U.S.C. § 1331.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), under which

venue is proper where any defendant resides if all defendants reside in the same state. Upon information and belief, Defendant H. Chang resides in Coppell, Texas at 806 Greenway Drive, located in the Northern District of Texas. Likewise, Defendant Club Wa is a corporation organized under the laws of the State of Texas and has its principal place of business in Dallas, Texas. Finally, Defendant S. Chang is a federal prisoner residing at the Federal Correctional Institute in Seagoville, Texas, located within the Northern District of Texas and for purposes of venue and service of process resides at 806 Greenway Drive.

12.     Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because all or substantially all of the events giving rise to the claims in the Complaint occurred in the Northern District of Texas.

13.     Venue is also proper in this Court under 18 U.S.C. § 1965(a), under which a civil action may be brought under RICO in any district in which Defendants reside, have an agent, or transact their affairs. In this case, all Defendants reside and transact their affairs in the Northern District of Texas.

### III.     PARTIES

14.     Plaintiffs are proceeding anonymously because each of them has been the victim of horribly degrading and intimidating conditions as a victim of a trafficking scheme by Defendants. Such quintessentially private matters will certainly expose each Plaintiff to public humiliation if her identity becomes known. Additionally, Plaintiffs fear retaliation by Defendants against them if their identities become known. The Changs have been convicted of crimes associated with their trafficking enterprise and have admitted to subjecting Plaintiff and others to conditions of forced labor, harassment and intimidation. Plaintiffs fear further, possibly violent, reprisals by Defendants against them in connection with this lawsuit if they are not permitted to proceed anonymously. See Doe v. Stengall, 653 F.2d 180, 186 (5th Cir. 1981).

These concerns far outweigh any interest that the public has in full disclosure or that Defendants have in avoiding prejudice, particularly given that Defendants have pled guilty and been punished for the violations described in this Complaint.

15.    At all relevant times, Plaintiffs were employees of Defendants and were forced to work at Club Wa in Dallas, Texas.  Plaintiffs were also kept confined in the home of the Changs in Coppell, Texas.  The events described in the Complaint occurred at those two locations.

16.    Defendant S. Chang is a 42-year-old federal prisoner (# 33473-177) in the custody of the United States at the Federal Correctional Institution in Seagoville, Texas.  At all relevant times, Defendant S. Chang was the owner of Club Wa and resided in Coppell, Texas. Mr. Chang pled guilty and was sentenced to 120 months in prison for violations of 18 U.S.C. §§ 371, 1589, 1594(a).[1]  As part of his plea agreement, Defendant Sung Bum Chang admitted that he conspired with others to obtain forced labor by trafficking in undocumented workers from Korea. (Ex. B.)  Mr. Chang may be served at his residence in Coppell, Texas at 806 Greenway Drive.

17.    Defendant H. Chang is the spouse of Defendant S. Chang and at all times relevant to this lawsuit resided in Coppell, Texas.  Mrs. Chang pled guilty and received probation for violations of 8 U.S.C. §§ 1324a(a)(1)(A), (a)(2), (f)(1) and 18 U.S.C. § 2.  As part of her plea agreement, Mrs. Chang admitted that she participated in the illegal trafficking enterprise.[2]  Mrs. Chang may be served at her residence in Coppell, Texas at 806 Greenway Drive.

18.    Defendant Club Wa is a corporation formed under the laws of the State of Texas.

---

[1] True and correct copies of Mr. Chang's sworn affidavit and Plea Agreement from the criminal action before the United States District Court for the Northern District of Texas are attached hereto as Exhibits A and B respectively and incorporated herein by reference.

[2] True and correct copies of Mrs. Chang's sworn affidavit and Plea Agreement from the criminal action before the United States District Court for the Northern District of Texas are attached hereto as Exhibits C and D respectively and incorporated herein by reference.

Defendant Club Wa may be served through its agent for service of process, Defendant S. Chang.

19.    At all relevant times, Defendants routinely did business in the Northern District of Texas and employed Plaintiff and other Korean nationals trafficked to the United States to work as virtual slaves at his establishment.

20.    At all relevant times, Defendants were "persons" within the meaning of 18 U.S.C. § 1961(3).

21.    At all relevant times, Defendants controlled an enterprise that engaged in interstate and/or foreign commerce.

22.    At all relevant times, Defendants were the single employer or joint employer of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d) and (g) and are subject to the provisions thereof.

## IV.    FACTS

### A.    The Trafficking Scheme

23.    Beginning in December 2004 and continuing through April 2005, when law enforcement officials raided his home, Defendants Chang and H. Chang conspired with others to smuggle women to the United States from Korea and force them to work at Club Wa, a business catering to Korean businessmen and Korean nationals.

24.    As part of the scheme, Mr. and Mrs. Chang participated in a human trafficking ring that used a series of brokers in South Korea to entice young Korean women to illegally enter the United States.  Guides smuggled the women across the U.S.-Canadian border on foot and transported them to Texas from points in California.  The Changs coordinated these activities with other members of the human trafficking network and paid the "smuggling" debts of the Korean women who were brought to the United States. Other members of the human trafficking network were based in Atlanta, Georgia; Dallas, Texas, Houston, Texas; and Los Angeles,

California. Defendant H. Chang aided and abetted the smuggling and forced labor scheme. She also worked at Club Wa, supervised the women, and kept track of their earnings and expenses, even though she knew that the women were in the country illegally.

25.    Plaintiffs were forced to work at Club Wa and live at Defendants' residence at 806 Greenway Drive, Coppell, Texas. They were among 6 women who were forced to live on the second floor of the Chang's house and rarely permitted to leave except to work at Club Wa. All of these women were aliens who had not been admitted for permanent residence or been authorized for employment in the United States pursuant to the Immigration and Nationality Act or the Attorney General. In addition to these women, the Changs admitted trafficking over fifty other women as part of a smuggling enterprise.

26.    Jane Doe 1 and 2 were told by a broker in Korea that they could easily repay the $12,000 "smuggling fee" by working for about four months in the United States. Both women flew to Canada, crossed the border by foot, and were subsequently driven to Dallas, Texas by several unidentified men. When Jane Doe 1 and 2 first arrived in Dallas, they stayed with a woman named Jung Eun Kim. The Changs came to see them there, asking them questions about their age. Kim later "sold" the women to the Changs at a cost of up to $12,000 for each woman.

27.    Jane Doe 3 was approached by a broker named Bahk Shil Chang, who told her that she could work in the United States as a hostess. He told her that it would cost her $10,000 to come to the United States and arranged a tourist visa for her. She flew to San Francisco, where she met another unidentified broker, and then flew to Dallas, where she was picked up by S. Chang.

28.    None of the women were told by the Korean brokers that that they would be subjected to physical and emotional torment, forced to drink alcohol as a condition of their

employment, live with the club owner under constant surveillance, and work six to seven days with no overtime pay.

### B.    The Debt Bondage

29.    S. Chang forced Plaintiffs to execute contracts requiring them to pay twice the amount of their "debt" should they leave their employment before six months' time. The "debt" the women owed to the Changs consisted of the expenses for smuggling them into the United States ($12,000 - $15,000) as well as varying amounts for food ($200 - $300), rent ($300), and utilities ($100 - $150) that were never substantiated by the Changs. The women were also forced to buy such things as blankets during autumn and winter, because Chang had locked the thermostat and would not provide them with anything more than a sheet. They were not allowed to use the dryer or to hang their clothes for drying.

30.    The Changs directed the women to work as club hostesses for six to seven days a week. He required the women to entertain and drink with customers so that customers would purchase more alcohol. The women were not permitted to throw away any alcohol; either they or a client had to drink everything, and the Plaintiffs would often be forced to drink until they became sick. The Changs fined the women for violating certain rules of behavior that resulted from their constant intoxication, including leaning against a table for support ($50), quarreling ($500), or falling asleep on the job ($50 - $70). If a party of two drank less than two bottles of alcohol, the hostess was fined $100. If a hostess crossed her legs, she had to pay a penalty. If a hostess did not secure regular customers who would come to Club Wa once a week, or if the Changs did not like her hair or makeup, that hostess would be prevented from making any tips that day. Fines were also accompanied by public humiliation, such as verbal abuse in front of the other women.

31.    H. Chang kept records on many of the women's earnings and the payment of their

"debt." Any fines incurred by violating Chang's rules of behavior were added to their debts. Wages were nominally $40 a day, but the women worked from 5 p.m. until the last customer left – usually 9 to 10 hours a day. The women were never paid for overtime. The wages were never paid directly to the women, but were subtracted from their debt ledger. If the women made any tips, they were deducted from their debts. The Changs would often change the terms of each Plaintiff's employment. When Jane Doe 2 had almost paid down her debt, she was told that she had to work at least six more months because Mr. Chang needed more money for a house payment.

### C.    The Physical, Emotional and Sexual Coercion

32.     Mr. Chang put restrictions on the women's ability to come and go from the residence and business. For example, he confiscated their Korean passports, monitored their movements with surveillance cameras, placed other employees at the exits to prevent the women from leaving, and assigned escorts to the women to compel them to remain at the club.

33.     Mr. Chang took advantage of the fact that Plaintiffs spoke very little English and, therefore, were incapable of leaving the Changs to seek help. .

34.     Mr. Chang also told the women that they were not free to leave unless and until they had paid off their debts, and he required them to name their family and give their addresses in Korea, telling the women that their families would be in danger and the women's shameful condition would become known if they did not obey the Changs.

35.     Mr. Chang threatened the plaintiffs on multiple occasions. For example, when Jane Doe 2 failed to sell less than two bottles of alcohol, he made physically threatening gestures, stated that he would "sell" her and asked her whether she "wanted to die."

36.     Mr. Chang would clean his rifle in the living room in plain sight, and he carried a gun with him in a suitcase. Plaintiffs felt threatened as a result of Chang's aggressive behavior.

37.     On one occasion Mr. Chang slapped Jane Doe 1 and beat her with his fists.  She experienced ringing in her ears from the beating.  Chang told her that if she tried to call the police or anyone else, he would beat her more severely.  The Changs would occasionally remind the other women that Jane Doe 1 had been beaten.

38.     On one occasion after the beating, Jane Doe 1 suddenly knelt down in front of a client who had raised his hand in jest and begged not to be beaten.  When Chang found out about this incident, he told her that he would double her debt and sell her to another business in the trafficking ring if she got him in trouble.

39.     The Changs also tried to force several women to be "companions" for clients in order to pay down their debts.  The Changs would keep whatever money was made from these encounters.  For example, Jane Doe 3 was "assigned" to a customer who requested a "second service" (sex).  She was told by Mr. Chang that the customer was a regular customer and that she was expected to have sex with him.  She was scared of what Chang would do if she did not agree and, therefore, was forced to have sex with the customer three or four times.

40.     Plaintiffs continue to suffer as a result of the abuse by the Changs.  For example, Jane Doe 1 becomes very nervous if someone makes sudden movements, because she continues to fear being beaten.  She wakes up in a fright if she hears someone talking while she sleeps.  Jane Doe 3 almost never sleeps more than 4 or 5 hours a night because of the stress.  She is constantly anxious about what will happen to her.

### D.      The Defendants' Arrests and Convictions

41.     In April 2005, another trafficking victim who lived at the house escaped from the Chang residence by leaping from a second story window.  She called a pastor whose phone number had been listed in a Korean language newspaper.  The pastor called the Bureau of Homeland Security Immigration and Customs Enforcement, who eventually raided the Chang

residence together with the FBI.

42.    On or about May 17, 2006, Defendant S. Chang pled guilty to criminal violations of 18 U.S.C. § 371 (Conspiracy to Provide or Obtain Forced Labor) and 18 U.S.C. §§ 1589 and 1594(a) (Forced Labor).  On October 18, 2006, Mr. Chang was sentenced to 120 months of imprisonment, three years of supervised release, restitution to Plaintiffs (among other victims of the trafficking scheme) and a special assessment fee.[3]

43.    On or about June 1, 2006, Defendant H. Chang pled guilty to the criminal violations of aiding and abetting the employment of unauthorized aliens in violation of 8 U.S.C. §§ 1324a(a)(1)(A), (a)(2), (f)(1), and 18 U.S.C. § 2.  She was sentenced to probation.

44.    As part of their sentencing, Defendants signed sworn affidavits and plea agreements setting forth admitted facts establishing these violations.  (*See* Exs. A-D.)

45.    Mr. Chang subsequently appealed his sentence, which was affirmed by the United States Court of Appeals for the Fifth Circuit.  U.S. v. Chang, No. 06-11229, 2007 WL 2253508, 237 Fed. Appx. 985 (5th Cir. Aug. 7, 2007).  The Fifth Circuit concluded that the District Court's sentencing enhancements in Mr. Chang's criminal case were not clearly erroneous.  Id. at 989.  In particular, the Court of Appeals noted that S. Chang was properly subject to a four-point offense level enhancement because he was the organizer and leader of an extensive criminal trafficking enterprise.  Id. at 988.  Moreover, S. Chang was properly subject to a two-point vulnerable victim enhancement, because of the unusual vulnerability of the women forced to work at Club Wa.  Id. at 989.

## V.    RICO ALLEGATIONS

### A.    The Racketeering Acts

46.    In order to perpetuate a criminal scheme to exploit Plaintiffs and other women,

---

[3] A true and correct copy of the Amended Judgment is attached as Exhibit E and incorporated herein by reference.

Defendant S. Chang knowingly and willfully committed the following predicate offenses under RICO, 18 U.S.C. § 1961(1)(B):

    a.    Trafficking in persons in violation of 18 U.S.C. §§ 1589, 1594;

    b.    Extortion in violation of 18 U.S.C. § 1951;

    c.    Wire fraud in violation of 18 U.S.C. §§ 1341, 1343.

47.    In order to perpetuate a criminal scheme to exploit Plaintiffs and other women, Defendants S. Chang and H. Chang knowingly and willfully committed the following predicate offenses under RICO, 18 U.S.C. § 1961(1)(F):

    a.    Harboring of aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii).

### Violations of 18 U.S.C. §§ 1589, 1594

48.    On May 17, 2006, Defendant S. Chang signed a sworn statement in connection with a Plea Agreement in which he admitted to willfully violating 18 U.S.C. §§ 1589, 1594. He further admitted to willfully joining a conspiracy to provide or obtain forced labor, with the intent to further the conspiracy's unlawful purpose, in violation of 18 U.S.C. § 371.

49.    Defendant S. Chang admitted that he forced Plaintiffs to work at Club Wa through the means prohibited by 18 U.S.C. § 1589, including:

    a.    physical restraint, including restrictions on Plaintiffs' movement and social contacts, monitoring Plaintiffs' movements with surveillance cameras and with escorts, and placement of employees at exits to prevent Plaintiffs from leaving (Ex. A at 3-4);

    b.    other means to compel Plaintiffs to pay off their debts for his own financial benefit, including confiscating their passport, executing a contract with Plaintiffs requiring at least six months of labor or services, fining Plaintiffs for violations of rules of behavior, and warning Plaintiffs and others that they were not free to leave unless and until they had paid off a smuggling debt and debts that Defendant S. Chang claimed were owed for rent and food (Ex. A at 3-4).

50.    These acts of forced labor in violation of 18 U.S.C. §§ 1589, 1594 constitute

"racketeering activity" as defined in RICO, 18 U.S.C. § 1961(1).

## Violations of 18 U.S.C. § 1951

51.    Defendants knowingly and willfully committed multiple predicate acts of extortion in violation of 18 U.S.C. § 1951 by wrongfully using threatened force and fear, as described above in paragraphs 1 through 41, to induce Plaintiffs to abandon their property rights to be paid in compliance with federal and state labor laws.

52.    Defendants violated 18 U.S.C. § 1951 by intentionally (a) affecting or attempting or conspiring to affect interstate commerce by (b) extortion of (c) Plaintiffs' property rights to be paid in compliance with state and federal law.

53.    These acts of extortion in violation of 18 U.S.C. § 1951 constitute "racketeering activity" as defined in RICO, 18 U.S.C. § 1961(1).

## Violations of 18 U.S.C. §§ 1341, 1343

54.    Defendant knowingly and willfully devised a scheme to defraud Plaintiffs and to obtain money or property from them by means of false or fraudulent pretenses, representations, or promises, as described in paragraphs 1 through 41 above. The money or property obtained from Plaintiffs included the wages, tips and overtime payments Defendants were required to pay to Plaintiff, but which they did not pay.

55.    Specifically, in his sworn affidavit, Defendant S. Chang admitted that, in collaboration with others, he recruited and brought young Korean women to Dallas, Texas with the intent to obtain and maintain their labor and services as hostesses of Club Wa. He further compelled them to pay off their "smuggling debts" and debts allegedly owed for food and rent while forcing them to work six or seven days per week and restricting their movements. (Ex. A at 3-4.)

56.    Defendant S. Chang contacted co-conspirators in Korea and the United States to make arrangements to transport Korean women, including Plaintiffs, to the United States illegally and without authorization from the United States government or United States Secretary of State over a period from on or about December 13, 2004 through April 26, 2005. These contacts were made solely for the purpose of defrauding Korean nationals like Plaintiffs who were isolated from the world, could not speak English, and forced to work for little or no compensation to pay off alleged "debts."

57.    These acts of wire fraud in violation of 18 U.S.C. §§ 1341, 1343 constitute "racketeering activity" as defined in RICO, 18 U.S.C. § 1961(1).

### Violations of 8 U.S.C. § 1324(a)(1)(A)(iii)

58.    Defendants knowingly and willfully violated 8 U.S.C. § 1324(a)(1)(A)(iii) by devising a scheme to harbor aliens in the United States illegally and without authorization. In his sworn affidavit, Defendant S. Chang admitted that, in collaboration with others, he recruited and brought to the United States young Korean women to Dallas, Texas and paid to other conspirators the smuggling debts of several Korean women who had been smuggled into, or who had otherwise become indebted for, their transportation to the United States. (Ex. A at 3.) He further admitted that the women, including Plaintiffs, were in the country illegally, lived in his residence under physical restraint, and were forced to work as hostesses at Club Wa. (Id.) Such conduct violated 8 U.S.C. § 1324(a)(1)(A)(iii).

59.    In her sworn affidavit, Defendant H. Chang admitted that she supervised Plaintiffs and others, all Korean nationals, "all the while knowing that the women were in the country illegally [as] unauthorized aliens." She further admitted that she knowingly and willfully

associated with the criminal venture and "sought by her actions to make that venture successful and to benefit therefrom." (Ex. C at 2.)

60.    The Changs committed violations of the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(1)(A)(iii), solely for the purpose of financial gain. Accordingly, the actions of Defendants in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) constitute "racketeering activity" as defined in RICO, 18 U.S.C. § 1961(1).

**B.    The RICO Enterprise**

61.    In his sworn affidavit, Defendant S. Chang admitted to conspiring with others to transport Korean nationals, including Plaintiffs, to Dallas, Texas to work at his nightclub. (Ex. A at 3.) In her sworn affidavit, Defendant H. Chang also admitted that she "aided and abetted a pattern or practice of hiring unauthorized aliens from South Korea for employment at Club Wa." (Ex. C at 2.) Defendant S. Chang trafficked women from Korea to the United States illegally by contacting a network of smugglers in Korea.

62.    Defendant S. Chang, using his position as owner and operator of Club Wa, made ongoing business associations with two or more parties for the purpose of executing essential aspects of the criminal worker exploitation scheme, including the transportation and subsequent physical restraint, intimidation and exploitation of unauthorized Korean nationals, including Plaintiffs. Defendant H. Chang aided and abetted in the conspiracy to force young Korean nationals, including Plaintiffs, to work at Club Wa as hostesses.

63.    Defendants could not successfully conduct their scheme of exploiting illegal aliens without the associations that formed the criminal exploitation enterprise. Defendants initiated and carried out the enterprise. They also directed the activities and managed the flow of information within the enterprise. This enterprise regularly moved goods and people across state lines and, therefore, was engaged in interstate and foreign commerce.

C.      **Pattern of Racketeering Activity**

64.     The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined in RICO, 18 U.S.C. § 1961(5).  Defendants repeatedly committed the RICO predicate acts of trafficking, extortion and harboring of illegal aliens.  Defendants committed multiple acts of wire fraud during all time periods relevant to this action.

65.     The predicate acts of criminal racketeering activity described above also were related in the following ways:

a.      They had common participants;

b.      They had the same victims (Plaintiffs and other women forced to work at Club Wa);

c.      They had the same purpose and result of benefiting Defendants financially at the expense of Plaintiffs and others;

d.      They were interrelated in that, without the acts of wire fraud by Defendants, Defendants would not have held Plaintiffs in conditions of forced labor or extorted their rights to contractual and lawful wages;

e.      They were part of a continuous trafficking scheme from at least December 13, 2004, through April 26, 2005.

## VI.      CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

Trafficking Victims Protection Reauthorization Act; Forced Labor
(18 U.S.C. §§ 1589, 1595)

66.     Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1 though 65, inclusive, as though set forth fully herein.

67.     The TVPRA imposes criminal penalties and civil liability on any person who "knowingly provides or obtains the labor or services of a person

(1)     by threats of serious harm to, or physical restraint against, that person or another person;

(2)    by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or

(3)    by means of the abuse or threatened abuse of law or the legal process . . . ."

18 U.S.C. § 1589.

68.    Pursuant to the TVPRA, "(a) [a]n individual who is a victim of a violation of section 1589 . . . may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595.

69.    It is undisputed that Defendants violated the TVPRA. As a result of Defendants' willful violation of 18 U.S.C. § 1589, Plaintiffs have suffered damages in an amount to be determined at trial. Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages, attorneys' fees and costs for Defendants' wrongful conduct.

## SECOND CLAIM FOR RELIEF

Use or Investment of Income Derived from a Pattern of Racketeering Activity or the Collection of an Unlawful Debt by a Principal to Operate an Enterprise
18 U.S.C. § 1962(a)

70.    Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1 though 69, inclusive, as though set forth fully herein.

71.    During all relevant times, Defendants engaged in a pattern of racketeering activity composed of the following predicate acts set forth in RICO, 18 U.S.C. § 1961(1)(B) and (F): trafficking in persons in violation of 18 U.S.C. §§ 1589, 1594; extortion in violation of 18 U.S.C. § 1951; wire fraud in violation of 18 U.S.C. § 1343; and harboring of aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii).

72.    During all relevant times, Defendants engaged in the collection of an unlawful debt by forcing Plaintiffs and others to pay off their "smuggling debts" incurred to transport

Plaintiffs and others illegally into the United States.

73.    Through this pattern of racketeering activity and the collection of unlawful debts, Defendants received income from Plaintiffs and others, directly and indirectly through the use of forced labor and the extortion of Plaintiffs' property.

74.    At all relevant times, Defendants were acting as principals as defined in 18 U.S.C. § 2 in connection with the pattern of racketeering activity and collection of unlawful debts by aiding, abetting, counseling, commanding, inducing and procuring the commission of offenses against the United States.

75.    Defendants used the income derived from the pattern of racketeering activity and collection of unlawful debts to operate an enterprise—Club Wa—that was engaged in, or the activities of which affect, interstate or foreign commerce.

76.    Pursuant to 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." Plaintiffs have suffered an injury in their property as a result of Defendants' acts and, therefore, are entitled to the remedies set forth in 18 U.S.C. § 1964(c).

### THIRD CLAIM FOR RELIEF

Acquisition and Maintenance of an Interest in and Control of an Enterprise
Through a Pattern of Racketeering Activity and Collection of an Unlawful Debt
18 U.S.C. § 1962(b)

77.    Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1 though 76, inclusive, as though set forth fully herein.

78.    During all relevant times, Defendants engaged in a pattern of racketeering activity composed of the following predicate acts set forth in RICO, 18 U.S.C. § 1961(1)(B) and (F):

trafficking in persons in violation of 18 U.S.C. §§ 1589, 1594; extortion in violation of 18 U.S.C. § 1951; wire fraud in violation of 18 U.S.C. § 1343; and harboring of aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii).

79.    During all relevant times, Defendants engaged in the collection of an unlawful debt by forcing Plaintiffs and others to pay off their "smuggling debts" incurred to transport Plaintiffs and others illegally into the United States.

80.    Through this pattern of racketeering activity and the collection of unlawful debts, Defendants maintained an interest in and control of an enterprise—Club Wa—that was engaged in activities affecting interstate or foreign commerce in violation of 18 U.S.C. § 1962(b).

81.    Pursuant to 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  Plaintiffs have suffered an injury in their property as a result of Defendants' acts and, therefore, are entitled to the remedies set forth in 18 U.S.C. § 1964(c).

## FOURTH CLAIM FOR RELIEF

Conduct and Participation in a RICO Enterprise through a Pattern of Racketeering Activity and
Collection of an Unlawful Debt
18 U.S.C. § 1962(c)

82.    Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1 though 81, inclusive, as though set forth fully herein.

83.    During all relevant times, Defendants engaged in a pattern of racketeering activity composed of the following predicate acts set forth in RICO, 18 U.S.C. § 1961(1)(B) and (F): trafficking in persons in violation of 18 U.S.C. §§ 1589, 1594; extortion in violation of 18 U.S.C. § 1951; wire fraud in violation of 18 U.S.C. § 1343; and harboring of aliens in violation of 8

U.S.C. § 1324(a)(1)(A)(iii).

84.     During all relevant times, Defendants engaged in the collection of an unlawful debt by forcing Plaintiffs and others to pay off their "smuggling debts" incurred to transport Plaintiffs and others illegally into the United States.

85.     Defendants were at all relevant times associated with an enterprise—Club Wa— that was engaged in, and whose activities did affect, interstate and foreign commerce.

86.     Defendants operated the enterprise through a pattern of racketeering activity consisting of multiple acts of racketeering activity and through the collection of unlawful "smuggling debts" from Plaintiffs in violation of 18 U.S.C. § 1962(c).

87.     Pursuant to 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  Plaintiffs have suffered an injury in their property as a result of Defendants' acts and, therefore, are entitled to the remedies set forth in 18 U.S.C. § 1964(c).

## FIFTH CLAIM FOR RELIEF

Conspiracy to Engage in Violations of Sections 1962 (a), (b) and (c)
18 U.S.C. §§ 1961(5), 1962(d)

88.     Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1 though 87, inclusive, as though set forth fully herein.

89.     During all relevant times, Defendants engaged in a pattern of racketeering activity composed of the following predicate acts set forth in RICO, 18 U.S.C. § 1961(1)(B) and (F): trafficking in persons in violation of 18 U.S.C. §§ 1589, 1594; extortion in violation of 18 U.S.C. § 1951; wire fraud in violation of 18 U.S.C. § 1343; and harboring of aliens in violation of 8

U.S.C. § 1324(a)(1)(A)(iii).

90.    During all relevant times, Defendants engaged in the collection of an unlawful debt by forcing Plaintiffs and others to pay off their "smuggling debts" incurred to transport Plaintiffs and others illegally into the United States.

91.    At all relevant times, Defendants conspired with others to receive income derived, directly or indirectly, from a pattern of racketeering activity and through collection of an unlawful debt in which Defendants participated as principals.  Defendants used such income to operate an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(a).

92.    At all relevant times, Defendants conspired with others to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity and the collection of an unlawful debt, in violation of 18 U.S.C. § 1962(b).

93.    At all relevant times, Defendants conspired with others to conduct and participate in said RICO enterprise through a pattern of racketeering activity and the collection of an unlawful debt, in violation of 18 U.S.C. § 1962(c).

94.    These acts resulted in the violations 18 U.S.C. § 1962(d).

95.    Pursuant to 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  Plaintiffs have suffered an injury in their property as a result of Defendants' acts and, therefore, are entitled to the remedies set forth in 18 U.S.C. § 1964(c).

## SIXTH CLAIM FOR RELIEF

Fair Labor Standards Act
(29 U.S.C. § 201, *et seq.*)

96.    Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1 though 95, inclusive, as though set forth fully herein.

97.    Plaintiffs provided services for Defendants at their establishment and at all relevant times were employees of Defendants, as defined by the FLSA.

98.    The FLSA, 29 U.S.C. § 201 *et seq.*, provides that an employer shall pay employees the minimum wage and shall pay an additional fifty percent of their wages for each hour of work that exceeds forty hours per week. Id. § 206. Plaintiffs, non-exempt employees, were never paid the minimum wage nor overtime wages for the services that they provided.

99.    Plaintiffs were held in conditions of forced labor as hostesses at Club Wa d/b/a Wa Entertainment, a business owned and operated by Defendants. Plaintiffs were forced to work as many as eight hours per day for six or seven days per week in return for "wages" that were retained by the Changs to pay off their "debts".

100.    During the period of time that Plaintiffs were employed by Defendants, they performed work for which they were not compensated and overtime work for which no additional compensation was paid to them by Defendants. Rather, Defendants charged Plaintiffs varying amounts to pay off debts that they claimed were owed for food, rent, and other debts. The payment of these so-called "debts" drastically reduced Plaintiffs' compensation.

101.    Defendants violated 29 U.S.C. § 206(a) by failing to pay Plaintiffs the applicable minimum wage for every compensable hour of labor they performed.

102.    Defendants violated 29 U.S.C. § 207(a) by failing to pay Plaintiffs an hourly rate equal to one and a half times the regular hourly rate at which they were employed for all

compensable time they were employed in excess of forty hours in each workweek.

103.    Defendants' failures to pay Plaintiffs the federally-mandated hourly minimum wage and the federally-mandated overtime wage rate for all time they were employed in excess of forty hours in a workweek were willful and knowing violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

104.    Defendants knew, should have known, or showed reckless disregard for the FLSA's minimum wage and overtime provisions applicable to Plaintiffs and willfully, intentionally, and without good faith violated these laws.  As a result of Defendants' willful violations of the FLSA, pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover their unpaid minimum and overtime wages, an additional equal amount in liquidated damages, and their reasonable attorneys' fees and costs in amounts to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

Alien Tort Claims Act
(28 U.S.C. § 1350)

105.    Plaintiffs hereby incorporate each and every allegation set forth in paragraphs 1 though 104, inclusive, as though set forth fully herein.

106.    Plaintiffs bring this action pursuant to the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350.

107.    Defendants obtained Plaintiffs' labor through legal, psychological and other means of coercion intended to cause Plaintiffs and others to believe that they would suffer serious harm if they did not continue to work for Defendants.

108.    Through such actions, Defendants committed the torts of involuntary servitude and forced labor in violation of treaties of the United States and specific, obligatory and universally accepted norms of international human rights law, including:

a.    The Universal Declaration of Human Rights ("UDHR") provides the following specific, obligatory and universally accepted norms: (a) Article 4 prohibits all forms of slavery; (b) Article 23 entitles all individuals to the right to just and favorable work conditions and the right to just and favorable remuneration; and (c) Article 24 entitles all individuals to reasonable limitations on working hours. See UDHR arts. 4, 23, 24, Dec. 10, 1948, 999 U.N.T.S. 171;

b.    Article 8 of the International Covenant on Civil and Political Rights ("ICCPR") prohibits forced labor or compulsory labor. See ICCPR art. 8, June 8, 1992, 993 U.N.T.S. 171;

c.    Articles 2 and 4 of the Convention Concerning Forced or Compulsory Labour ("CCFCL") prohibit forced or compulsory labor, defined as "all work or service which is exacted from any persons under the menace of any penalty and for which the said person has not offered himself voluntarily." CCFCL (ILO No. 29) arts. 2, 4, June 28, 1930, 39 U.N.T.S. 55;

d.    Article 2 of the Convention (No. 105) Concerning the Abolition of Forced Labour ("CAFL") requires signatories to take effective measures to secure the immediate and complete abolition of forced or compulsory labor. CAFL art. 2, June 25, 1957, 320 U.N.T.S. 291;

e.    Article 7 of the International Covenant on Economic, Social and Cultural Rights ("ICESCR") recognizes the right of all individuals to fair wages and equal remuneration for work of equal value without distinction of any kind as well as reasonable limitations on working hours. ICESCR art. 7, Dec. 16, 1966, 993 U.N.T.S. 3;

f.    Article 6 of the American Convention on Human Rights ("ACHR") prohibits forced or compulsory labor, involuntary servitude, and trafficking in women. ACHR art. 6, June 1, 1977, 1114 U.N.T.S. 123;

g.    Article 7 of Additional Protocol to the American Convention on Human Rights in the Area of Economic, Social and Cultural Rights ("Protocol") recognizes the right of all workers to dignified and decent living conditions for them and their families, fair wages and equal remuneration for work of equal value without distinction, and reasonable limitations on working hours. Protocol art. 7, Nov. 17, 1988, O.A.S.T.S. No. 69;

h.    Articles 6 and 11 of the Convention on the Elimination of All Forms of Discrimination Against Women ("CEDAW") prohibit all forms of traffic of women. CEDAW arts. 6, 11, Dec. 18, 1979, 1249 U.N.T.S. 13;

i.    Articles 2 and 3 of the Declaration on the Elimination of Violence Against Women ("DEVAW") entitle women to certain rights, including the right to just and favorable conditions of work and the right not to be subjected

to cruel, inhuman, or degrading treatment or punishment. In particular, violence against women, prohibited under the treaty, is understood to include trafficking in women. DEVAW arts 2, 3, Dec. 20, 1993, G.A. Res. 48/104, U.N. GAOR, 48th Sess., Supp. No. 49, at 217, U.N. Doc. A/Res/48/104 (Dec. 20, 1993);

j.      Articles 5, 6 and 8 of the Declaration on the Human Rights of Individuals Who Are Not Nationals of the Country in Which They Live ("Human Rights Declaration") protects aliens from torture or cruel, inhuman, or degrading treatment or punishment and guarantees the right to safe and healthy working conditions and fair wages. Human Rights Declaration, G.A. Res. 40/144, Annex. 40 U.N. GAOR Supp. (No. 53) at 252, U.N. Doc. A/40/53 (Dec. 13, 1985);

109.    Each of these international treaties described above have widespread acceptance in the international community. Moreover, the treaties establish *jus cogens* norms that, when violated, give rise to liability under the ATCA, including international norms against compulsory or forced labor. Indeed, "forced labor is so widely condemned that it has achieved the status of a *jus cogens* violation." See Doe I v. Unocal Corp., 395 F.3d 932, 945 (9th Cir. 2002), vacated and reh'g en banc granted, 395 F.3d 978 (9th Cir. 2003), district ct. op. vacated by 403 F.3d 708 (9th Cir. 2005).

110.    That the prohibition against involuntary servitude or forced labor is a *jus cogens* norm is also clear in Congress' findings in support of the TVPA. Congress specifically found that the right to be free from slavery and involuntary servitude is an unalienable right. (TVPA § 7101(b)(22).) Likewise, Congress noted: "The United States and the international community agree that trafficking in persons involves grave violations of human rights and is a matter of pressing international concern." Id. at § 7101(b)(23). Moreover, the international community has "repeatedly condemned slavery and involuntary servitude, violence against women, and other elements of trafficking, through declarations, treaties and United Nations resolutions and reports," listing many of the treaties and declarations above. Id.

111.    Plaintiffs suffered injury as a result of Defendants' actions and are entitled to

compensatory damages at an amount to be determined at trial.

112.    Additionally, because Defendants willfully and knowingly violated U.S. treaties and other international norms by engaging in trafficking with the goal of forcing Plaintiffs and other Korean nationals to work under conditions of duress, intimidation and fear, Plaintiffs are entitled to punitive damages at an amount to be determined at trial.

## VII.    REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court:

1.    Rule in favor of Plaintiffs on each and every cause of action asserted in the Original Complaint;

2.    Award such damages as may be appropriate, including punitive and treble damages;

3.    Award Plaintiffs their attorneys' fees and costs;

4.    Award Plaintiffs pre- and post-judgment interest; and

5.    Award any such other and further relief as the Court deems just and proper.

FULBRIGHT & JAWORSKI L.L.P.

Richard Krumholz
State Bar No.  00830700
Luis G. Zambrano
State Bar No.  24033497
Brandon Crisp
State Bar No.  24054491
Grace L. Hill
State Bar No. 24060152

2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-2784
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

ATTORNEYS FOR PLAINTIFFS

# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 1 7 2006

CLERK, U.S. DISTRICT COURT
By _____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:05-CR-127-L |
| | § | |
| SUNG BUM CHANG (1) | § | |

## FACTUAL RESUME

Sung Bum Chang, Bruce Anton, the defendant's attorney, and the United States of

America agree to the law and facts as follows:

1.    **Elements of the Offenses.**

Count One
Conspiracy to Provide or Obtain Forced Labor
(Violation of 18 U.S.C. § 371 [18 U.S.C. § 1589])

The essential elements of an offense under Count One of the superseding

indictment, Conspiracy to Provide or Obtain Forced Labor, a violation of 18 U.S.C. § 371

[18 U.S.C. § 1589], are as follows:

*First*:      that the defendant and at least one other person made an agreement to
commit the crime of Forced Labor, as charged in the indictment;

*Second*:   that the defendant knew the unlawful purpose of the agreement
and joined in it willfully, that is, with the intent to further the
unlawful purpose; and

*Third*:     that one of the conspirators during the existence of the conspiracy
knowingly committed at least one of the overt acts described in the
indictment, in order to accomplish some object or purpose of the
conspiracy.

Factual Resume - Page 1

Count Three
Forced Labor/Attempt
(Violation of 18 U.S.C. §§ 1589 and 1594(a))

The essential elements of an offense under Count Three of the superseding

indictment, Forced Labor/Attempt, a violation of 18 U.S.C. §§ 1589 and 1594(a), are as

follows:

| | |
|---|---|
| *First*: | that the defendant provided or obtained the labor or services of another person; |
| *Second*: | that the defendant used at least one of the following three prohibited means: |

        (A)    threats of serious harm to, or physical restraint against, that person or another person; or

        (B)    a scheme, plan or pattern intended to cause the person to believe that nonperformance of labor or services would result in serious harm to or physical restraint against that person or any other person; or

        (C)    the abuse or threatened abuse of law or the legal process; and

| | |
|---|---|
| *Third*: | that the defendant acted knowingly. |

2.    **Stipulated Facts**:  On or about December 13, 2004, and continuing through

on or about April 26, 2005, in the Dallas Division of the Northern District of Texas, and

elsewhere, the defendant, Sung Bum Chang, and others, did knowingly and willfully

combine, confederate, conspire and agree with one another and others, to commit certain

offenses against the United States, specifically, to willfully hold club workers in a

condition of forced labor in violation of 18 U.S.C. § 1589, as alleged in Count One of the

superseding indictment.  Defendant was aware of the unlawful purpose of this conspiracy

and joined in it willfully, with the intent to further the conspiracy's unlawful purpose.

**Factual Resume - Page 2**

In furtherance of the conspiracy and to effect the objects thereof, within the Northern District of Texas and elsewhere, the defendant, together with others, committed and caused to be committed the following overt acts, among others. Defendant is the owner of "Club Wa" in Coppell, Texas, also doing business as "Wa Entertainment," and the owner of a residence located at 806 Greenway Drive, Coppell, Texas. Beginning on or about December 13, 2004, and continuing through on or about April 26, 2005, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant Sung Bum Chang, in collaboration with others, recruited and brought young Korean women from South Korea to Dallas, Texas, to obtain and maintain their labor and services as club hostesses at Club Wa. Defendant paid to other conspirators the smuggling debts of several Korean women who had been smuggled into, or who had otherwise become indebted for their transportation to the United States. Thereafter, the women, who were in the country illegally, lived at the Chang residence and were required to work at Club Wa, through the means prohibited by 18 U.S.C. § 1589(1) and (2), including physical restraint, such as restrictions on the women's ability to come and go from the residence and business through a video surveillance system and the placement, at times, of other employees at the exits, as well as the other means described below, in order to compel them to pay off their debt and for his own financial benefit. Included in the group of women living in the Chang residence were victims "M.J.Y.", "H.Y.J.", "J.S.L.", "E.M.L.", and "G.H.H.," all female Korean nationals, who were held in a condition of forced labor as hostesses at Club Wa.

**Factual Resume - Page 3**

Beginning on or about December 13, 2004, and continuing until on or about April 26, 2005, defendant monitored the aliens' movements in person or through an escort and via a video surveillance system. During the relevant time period, defendant directed the women to work as club hostesses for six to seven days a week. He required the women to sit with customers and otherwise entertain them, so that the customers would buy more liquor from Club Wa. Defendant maintained records regarding many of the women's earnings and the payment of their debt. He charged the women varying amounts for food and lodging, such amounts being added to their overall debt to him.

Defendant Sung Bum Chang engaged in a range of conduct to force the young Korean women to continue working for him. This conduct included, among other things, holding the victims' passports, executing contracts with the victims requiring at least six months of labor or services, restricting the victims' movement and social contact, monitoring the victims' movements with surveillance cameras, and fining the victims for violating the rules of behavior. On or about December 2004, and on multiple occasions thereafter, defendant warned the women that they were not free to leave unless and until they had paid off the smuggling debt, as well as debts that he claimed the women owed for rent and food. On one occasion, in view of the conditions she was subjected to and at a time when her departure from the residence through the normal exit was precluded, H.Y.J. escaped from the Chang residence by leaping from a second story window.

The property listed in Count 10 of the superseding indictment was used in or intended to be used to commit or to facilitate the commission of the offenses alleged in

Factual Resume - Page 4

Counts 1 and 3 of the superseding indictment and/or was the proceeds from or was derived from proceeds of the commission of the offenses alleged in Counts 1 and 3 of the superseding indictment.

AGREED TO AND SIGNED this _17th_ day of _May_, 2006.

RICHARD B. ROPER
United States Attorney


SARAH R. SALDAÑA
Assistant United States Attorney
Texas State Bar No. 05776775
1100 Commerce Street, Third Floor
Dallas, Texas 75242
214.659.8600
Facsimile: 214.767.4100

WAN J. KIM
Assistant Attorney General
Civil Rights Division


J. EVANS RICE III
Trial Attorney
D.C. Bar No. 481768
Civil Rights Division
950 Pennsylvania Ave., NW
Washington, DC 20530
202.305.7300
Facsimile: 202.514.8336


SUNG BUM CHANG
Defendant


BRUCE ANTON
Attorney for Defendant
Texas State Bar No. 02916300