**ORIGINAL** IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DEC 10 2008
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | | |
|---|---|---|
| JANE DOES 1-3, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| SUNG BUM CHANG, | § | |
| HYANG KYUNG CHANG, AND | § | **3-08CV2189-N** |
| CLUB WA D/B/A WA | § | |
| ENTERTAINMENT, INC. | § | |
| | § | |
| Defendants. | | |

**MOTION SEEKING LEAVE TO PROCEED ANONYMOUSLY
AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs, through Counsel, file this Motion Seeking Leave to Proceed Anonymously and Memorandum of Law in Support (the "Motion") and respectfully request that: (1) the Court permit them to file this action anonymously; (2) Plaintiffs be allowed to withhold their names and addresses from Defendants; (3) the public be excluded from any court proceedings in this matter in which the Plaintiffs make a personal appearance; and (4) that the Court grant any other relief it deems necessary and just.[1]

Plaintiffs seek leave to file anonymously because they fear retaliation by Defendants, who have been convicted of violations of the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"). Plaintiffs also fear the public disclosure of intimate details regarding their captivity and forced labor. In support of their Motion, Plaintiffs respectfully state as follows:

---

[1] An Original Complaint has been filed contemporaneously with this Motion, which uses the designation Jane Does 1-3 for Plaintiffs.

## I. APPENDIX

As evidentiary support, Plaintiffs attach sworn statements and plea agreements of Defendants Sung Bum Chang and Hyang Kyung Chang as Exhibits A and B and incorporate them herein by reference. As a condition of their pleas in an underlying criminal case, the Changs signed sworn statements detailing their criminal violations of the TVPRA. (App. at 2-6, 15-17.) These same facts form the basis of this action. Plaintiffs also attach the Amended Judgment in a Criminal Case involving Defendant Sun Bum Chang as Exhibit C and incorporate it herein by reference.

Moreover, this Motion is supported by affidavits from two Plaintiffs submitted in the criminal case. However, because the affidavits name the women and list their addresses, and because of the sensitive nature of this case, Plaintiffs respectfully request that such affidavits be reviewed by the Court in camera if they are necessary for the resolution of this Motion. *See generally In re Grand Jury Subpoena*, 926 F.2d 1423 (5th Cir. 1991) (dictum) (recognizing that the district court had the authority to review the affidavits of an anonymous party in camera and ex parte).

## II. BACKGROUND

Beginning in December 2004 and continuing through April 2005, when law enforcement officials raided their home, Defendants Sung Bum Chang and Hyang Kyung Chang conspired with others to smuggle women to the United States from Korea and force them to work at Club Wa, a business catering to Korean businessmen and Korean nationals. (App. at 3.) As part of the scheme, Mr. and Mrs. Chang participated in a human trafficking ring that used a series of brokers in South Korea to entice young Korean women to illegally enter the United States. (*Id.* at 3-4.) The Changs coordinated these activities with other members of the human trafficking

network and paid the "smuggling" debts of the Korean women who were brought to the United States. (*Id.* at 4.) Defendant H. Chang aided and abetted the smuggling and forced labor scheme. She also worked at Club Wa, supervised the women, and kept track of their earnings and expenses, even though she knew that the women were in the country illegally. (*Id.* at 16)

Plaintiffs were forced to work at Club Wa and live at Defendants' residence at 806 Greenway Drive, Coppell, Texas. (*Id.* at 4.) They were among 5 women who were forced to live on the second floor of the Chang's house and rarely permitted to leave except to work at Club Wa. (*Id.* at 4-5.) All of these women were aliens who had not been admitted for permanent residence or been authorized for employment in the United States pursuant to the Immigration and Nationality Act or the Attorney General. (*Id.* at 16.) In addition to these women, the Changs admitted trafficking over fifty other women as part of a smuggling enterprise. *See U.S. v. Chang*, No. 06-11229, 2007 WL 2253508, 237 Fed. Appx. 985, 988 (5th Cir. Aug. 7, 2007) ("Over a three year period, Chang organized the forced labor of between 50 and 60 women.")[2]

The Changs put restrictions on the women's ability to come and go from the residence and business. (*Id.* at 4-5.) For example, they confiscated Plaintiffs' Korean passports, monitored their movements with surveillance cameras, placed other employees at the exits to prevent the women from leaving, and assigned escorts to the women to compel them to remain at the club. (*Id.* at 4-5.) Mr. Chang took advantage of the fact that Plaintiffs spoke very little English and, therefore, were incapable of leaving the Changs to seek help. Mr. Chang also told the women that they were not free to leave unless and until they had paid off their debts, and he required them to name their family and give their addresses in Korea, telling the women that their families

---

[2] Plaintiffs request that this Court take judicial notice of the Fifth Circuit's opinion *U.S. v. Chang*, No. 06-11229, 2007 WL 2253508, 237 Fed. Appx. 985 (5th Cir. Aug. 7, 2007), which affirmed the District Court's sentencing of Defendant S. Chang for violations of the TVPRA. The facts in the opinion describe Mr. Changs central role in organizing and running the criminal enterprise that enslaved Plaintiffs and others.

would be in danger.

Mr. Chang also threatened the plaintiffs on multiple occasions. For example, when Jane Doe 2 failed to sell less than two bottles of alcohol, he made physically threatening gestures, stated that he would "sell" her and asked her whether she "wanted to die." Chang would clean his rifle in the living room in plain sight, and he carried a gun with him in a suitcase. On one occasion Chang slapped Jane Doe 1 and beat her with his fists. Chang told her that if she tried to call the police or anyone else, he would beat her more severely. The Changs would occasionally remind the other women that Jane Doe 1 had been beaten.

The Changs also tried to force several women to be "companions" for clients in order to pay down their debts. The Changs would keep whatever money was made from these encounters. For example, Jane Doe 3 was "assigned" to a customer who requested a "second service" (sex). She was told by Mr. Chang that the customer was a regular customer and that she was expected to have sex with him. She was scared of what Chang would do if she did not agree and, therefore, was forced to have sex with the customer three or four times.

In April 2005, another trafficking victim who lived at the house escaped from the Chang residence by leaping from a second story window and contacted the authorities. (*Id.* at 5.) The Bureau of Homeland Security Immigration and Customs Enforcement eventually raided the Chang residence together with the FBI. On or about May 17, 2006, Defendant Sung Bum Chang pled guilty to criminal violations of 18 U.S.C. § 371 (Conspiracy to Provide or Obtain Forced Labor) and 18 U.S.C. §§ 1589 and 1594(a) (Forced Labor). (*Id.* at 7-13.) On October 18, 2006, Mr. Chang was sentenced to 120 months of imprisonment, three years of supervised release, restitution to Plaintiffs (among other victims of the trafficking scheme) and a special assessment fee. (*Id.* at 25-33.) On or about June 1, 2006, Defendant Hyang Kyung Chang pled guilty to the

criminal violations of aiding and abetting the employment of unauthorized aliens in violation of 8 U.S.C. §§ 1324a(a)(1)(A), (a)(2), (f)(1), and 18 U.S.C. § 2. (*Id.* at 18-23.) She was sentenced to probation.

Mr. Chang subsequently appealed his sentence, which was affirmed by the United States Court of Appeals for the Fifth Circuit. *U.S. v. Chang*, No. 06-11229, 2007 WL 2253508, 237 Fed. Appx. 985 (5th Cir. Aug. 7, 2007). The Fifth Circuit concluded that the District Court's sentencing enhancements in Mr. Chang's criminal case were not clearly erroneous. *Id.* at 989. In particular, the Court of Appeals noted that S. Chang was properly subject to a four-point offense level enhancement because he was the organizer and leader of an extensive criminal trafficking enterprise. *Id.* at 988. Moreover, S. Chang was properly subject to a two-point enhancement, because of the unusual vulnerability of the women forced to work at Club Wa. *Id.* at 989.

### III. ARGUMENT

Rule 10 of the Federal Rules of Civil Procedure requires a party commencing a civil action to disclose his or her name in the complaint. *See* Fed. R. Civ. P. 10(a); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *see also Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992). Moreover, under Rule 17 of the Federal Rules of Civil Procedure, "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Under certain special circumstances, however, courts have allowed plaintiffs to conceal their true identities when pursuing a lawsuit. *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979). For example, in a select number of cases involving matters of a sensitive and highly personal nature, such as birth control, abortion, homosexuality, and the welfare rights of illegitimate children and abandoned families, courts have recognized the need to protect matters of utmost privacy and intimacy. *See id.* at 712-13 (citations omitted).

There is no hard and fast rule for courts to follow when deciding whether to allow a party to proceed under a fictitious name. *See Stegall*, 653 F.2d at 185. Rather, the court must decide whether the need to maintain a party's privacy outweighs the customary presumption of openness in judicial proceedings. *Id.* at 186. Factors that courts have taken into consideration when determining whether to permit a plaintiff to proceed under a fictitious name include: (1) whether the plaintiff seeking anonymity is suing to challenge governmental activity; (2) whether prosecution of the suit compels the plaintiff to disclose information of the utmost intimacy; and (3) whether the plaintiff is compelled to admit her intention to engage in illegal conduct, thereby risking criminal prosecution. *See Stegall*, 653 F.2d at 185; *Wynne & Jaffe*, 599 F.2d at 712-13.

Courts have also considered the relevant facts and circumstances of a particular case when assessing whether a plaintiff may proceed under a fictitious name. For example, the court may weigh potential threats of violence when deciding whether to permit a party to use a pseudonym. *See Stegall*, 653 F.2d at 186. Furthermore, courts have viewed a party's age and related vulnerability as a factor of potential significance in determining whether anonymity is appropriate. *See id.* Moreover, courts have considered whether allowing a party to proceed anonymously would have any prejudicial impact on the defending parties. *See Frank*, 951 F.2d at 323-24. Courts should "carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Id.* at 323.

Courts in other jurisdictions have granted leave to proceed anonymously in similar situations to this case. For example, in *Javier H. v. Garcia-Botello*, migrant farm workers filed claims under the Fair Labor Standards Act (FLSA), the Migrant and Seasonal Agricultural Worker Protection Act (MSAWPA), and the Racketeer Influenced and Corrupt Organizations

Act (RICO) and sought leave to proceed anonymously. 211 F.R.D. 194, 195 (W.D.N.Y. 2002). The court concluded that the plaintiffs had a substantial privacy interest that outweighed the presumption of openness in judicial proceedings. *Id.* at 196. The court noted that the Defendants had been charged with serious crimes arising out of the same facts that supported the lawsuit. *Id.* Additionally, the Defendants had threatened the plaintiffs with violence in the past and were charged with similar acts of harassment, intimidation, and threats of violence. *Id.*

This case involves the same type of activity on the part of the Defendants. The Defendants each admitted to unconscionable violations of the TVPRA. In his sworn statement, Defendant Sung Bum Chang stated under oath that he knowingly and willfully conspired with others to hold Plaintiffs in a condition of forced labor. (App. at 3-5.) Among other things, he held the women's passports, restricted their movements, monitored them with surveillance cameras, and warned the women that they were not free to leave until they had paid off their smuggling debts. (*Id.*) Defendant Hyang Kyung Chang admitted that she aided and abetted Mr. Chang's conduct and supervised the women. (App. at 16.) Both Defendants were convicted, and Defendant Sum Bum Chang was sentenced to 120 months in prison. (App. at 7, 18, 25.) Thus, like *Javier H.*, Plaintiffs in this case have already been subjected to admitted criminal acts by the Defendants and have a reasonable fear that Defendants and/or their family will retaliate. *See also Does v. Rodriguez*, Nos. CIV A 06-CV-00805-LTB, CIV A 06-MC-00017-LTB, 2007 WL 684114, at *2-*3 (D. Colo. Mar. 2, 2007) (allowing Plaintiffs to proceed anonymously in the context of a TVPRA case due to reasonable fears of retaliation).

Plaintiffs also would be forced to disclose information of the utmost intimacy, which if their identities are known, would cause tremendous suffering. The fact of Plaintiffs' unique vulnerability led the Fifth Circuit to uphold a higher sentence in the case of Mr. Chang. *See*

*Chang*, 237 Fed Appx. at 989 ("The district court found that one victim, GHH, came from an impoverished background in a small village and spoke limited English. These factors and her illegal status made her particularly susceptible to Chang's criminal conduct. Specifically, the court found that Chang took advantage of GHH's background and immigration status when telling her that the contract to repay her smuggling debt was enforceable in the United States."). All of the Plaintiffs were victims of a trafficking ring who were smuggled into the United States from Korea, physically restrained, and forced to work for the Changs at the nightclub. They were subjected to physical and emotional stress as a result of their captivity. Thus, given their unusual vulnerability, Plaintiffs should not be required to disclose their identities.

Finally, Defendants cannot show that they would be prejudiced if Plaintiffs proceeded anonymously. Defendants have already admitted that they violated the TVPRA and have been convicted and sentenced for their crimes. The fact that the Plaintiffs' identities are not disclosed would not harm their reputations, cause public humiliation, or prevent Defendants from defending against this lawsuit in a manner that would outweigh Plaintiffs' privacy interests.

## IV.   CONCLUSION

WHEREFORE, Plaintiffs have established a substantial privacy interest that outweighs the presumption of openness in judicial proceedings. Plaintiffs have also demonstrated that Defendants have a propensity toward violence and other criminal activity and that they have the capacity to retaliate against the Plaintiffs. Plaintiffs have been courageous in bringing this case forward and seeking to prevent the exploitation of other women. They seek the court's protection from retaliation so that they can remedy these abuses. Accordingly, Plaintiffs respectfully request that this Court:

1. Allow them to file their Civil Complaint against Defendants anonymously;

2. Allow them to withhold their names and addresses from Defendants;

3. Order that the public be excluded from any court proceedings in this matter in which Plaintiffs make a personal appearance;

4. Grant any other relief it deems necessary and just.

FULBRIGHT & JAWORSKI L.L.P.

_/s/ Richard Krumholz_

Richard Krumholz
State Bar No. 00830700
Luis G. Zambrano
State Bar No. 24033497
Brandon Crisp
State Bar No. 24054491
Grace L. Hill
State Bar No. 24060152

2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2008, I served the foregoing Motion Seeking Leave to Proceed Anonymously and Memorandum of Law in Support on the following via First Class Mail:

Sung Bum Chang
Reg. No. 33473-177
FCI
P.O. Box 9000
Seagoville, TX  75159-9000

Hyang Kyung Chang
806 Greenway Drive
Coppell, TX 75019

_____
Luis G. Zambrano